**BROWN & CONNERY, LLP**
Jennifer A. Harris, Esq.
6 North Broad Street
Woodbury, New Jersey 08096
(856) 812-8900
*Attorneys for Defendant, TD Bank, N.A.*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ECC ENTERPRISE LIMITED,<br><br>                Plaintiff,<br><br>v.<br><br>TD BANK, N.A.<br><br>                Defendant. | Civil Action No. 1:23-CV-03760-KMW-AMD<br><br>Motion Date: October 2, 2023 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT TD BANK, N.A.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii
INTRODUCTION .............................................................................................................. 1
FACTUAL BACKGROUND and PROCEDURAL HISTORY ...................................... 2
LEGAL ARGUMENT ....................................................................................................... 3
    A.    Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6). .................................. 3
    B.    The UCC Precludes Plaintiff's Common Law Claim. ...................................... 4
    C.    Plaintiff's Declaratory Relief Count Should be Dismissed as a Matter of Law. ............. 6
    D.    Plaintiff's Replevin Claim Should be Dismissed as a Matter of Law.............................. 7
CONCLUSION .................................................................................................................. 9

# TABLE OF AUTHORITIES

Cases

ADS Assocs. Grp., Inc. v. Oritani Sav. Bank, 219 N.J. 496 (2014) ............................................... 4

ASAH v. N.J. Dep't of Educ.,
  No. 16-3935, 2017 U.S. Dist. LEXIS 101736 (D.N.J. June 20, 2017) ..................................... 6

Ashcroft v. Iqbal,
  556 U.S. 662 (2009) ............................................................................................................ 3, 4, 5

Chruby v. Kowaleski,
  534 Fed. Appx. 156 (3d Cir. 2013) ............................................................................................ 6

Cole v. NIBCO, Inc.,
  No. 13-7871, 2015 U.S. Dist. LEXIS 65960 (D.N.J. May 20, 2015) ......................................... 6

DeFazio v. Wells Fargo Bank Nat'l Ass'n,
  No. 20-375, 2020 U.S. Dist. LEXIS 66848 (D.N.J. Apr. 16, 2020) ........................................... 5

Dougherty v. Drew Univ.,
  534 F. Supp. 3d 363 (D.N.J. 2021) ............................................................................................ 8

Essgeekay Corp. v. TD Bank, N.A.,
  No. 18-3663, 2018 U.S. Dist. LEXIS 214691 (D.N.J. Dec. 19, 2018) ...................................... 5

First Atlantic Federal Credit Union v. Perez, 391 N.J. Super. 419 (App. Div. 2007) .................... 4

Harborview Capital Partners, LLC v. Cross River Bank,
  600 F. Supp. 3d 485 (D.N.J. 2022) ............................................................................................ 5

Hunt v. Chambers,
  21 N.J.L. 620 (E. & A. 1845) ..................................................................................................... 7

Kabbaj v. Google Inc.,
  592 Fed. Appx. 74 (3d Cir. 2015) .............................................................................................. 6

Lee Dodge, Inc. v. Kia Motors Am., Inc.
  No. 10-5939, 2011 U.S. Dist. LEXIS 97828 (D.N.J. Aug. 31, 2011) ........................................ 7

Mandelbaum v. Weiss,
  11 N.J. Super. 27 (App. Div. 1950) ........................................................................................... 7

Morrow v. Balaski,
  719 F.3d 160 (3d Cir. 2013) ....................................................................................................... 4

Neuss v. Rubi Rose, LLC,
  No. 16-2339, 2017 U.S. Dist. LEXIS 83444 (D.N.J. May 31, 2017) ........................................ 6

New Jersey Bank, N.A. v. Bradford Securities Operations, Inc.,
  690 F.2d 339 (3d Cir. 1982) ....................................................................................................... 5

Palakovic v. Wetzel,
  854 F.3d 209 (3d Cir. 2017) ....................................................................................................... 3

Psak, Graziano, Piasecki & Whitelaw v. Fleet Nat. Bank,
  390 N.J. Super. 199 (App. Div. 2007) ....................................................................................... 4

Sheridan v. NGK Metals Corp.,
    609 F.3d 239  (3d Cir. 2010)................................................................................................. 4

VW Credit, Inc. v. CTE2, LLC,
    No. 2:19-cv-19523-CCC-ESK, 2019 U.S. Dist. LEXIS 210548 (D.N.J. Dec. 6, 2019) ........... 8

Yahn & McDonnell, Inc. v. Farmers Bank of State of Del.,
    708 F.2d 104 (3d Cir. 1983)................................................................................................... 5

Statutes

N.J.S.A. 12A:4A-103(1)(b) ............................................................................................................ 8
N.J.S.A. 12A:4A-103(1)(c) ............................................................................................................ 8
N.J.S.A. 12A:4A-404(1) ................................................................................................................. 8
N.J.S.A. 2B:50-1 ........................................................................................................................ 7, 8

## INTRODUCTION

Plaintiff ECC Enterprise Limited ("Plaintiff"), a company based in Hong Kong, alleges it was the victim of a scam, having wired $348,300.00 to an account at TD Bank, N.A. ("TD Bank") in furtherance of an order of frozen chicken only later to discover that the representatives with whom it was dealing were imposters and not associated with a global frozen meat supplier. Plaintiff waited five months after the wires were sent to attempt to recover the wired funds. When Plaintiff's recovery efforts were unsuccessful, Plaintiff filed a complaint against TD Bank seeking conversion, replevin, and declaratory relief (the "Complaint"). TD Bank moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and, in response, Plaintiff filed its First Amended Complaint omitting its conversion count and clarifying that it "does not contend that [TD Bank] committed any wrongdoing or was negligent in its acceptance of the transferred funds." See First Amended Compl. at ¶ 1. (ECF No. 8). For the reasons stated below, Plaintiff's First Amended Complaint does not and cannot cure the deficiencies that existed in its original Complaint and it should be dismissed in its entirety.

Wire transfers, referred to as "funds transfers" under the Uniform Commercial Code as adopted in New Jersey ("UCC"), are comprehensively governed by Article 4A of the UCC. Here, Plaintiff has not pled a claim pursuant to Article 4A. Instead, Plaintiff asserts a common law claim for replevin and a count seeking declaratory relief. Plaintiff's common law claim is not only preempted by Article 4A, but independently fails because it is based on insufficient and conclusory allegations. Plaintiff's claim seeking declaratory relief should also be dismissed because declaratory relief is a remedy, not a substantive cause of action. Courts in this Circuit routinely dismiss stand-alone counts for declaratory relief.

**FACTUAL BACKGROUND and PROCEDURAL HISTORY**

Plaintiff alleges that in October 2022 it became acquainted with Renato Lopes and Juan Carlos, who represented themselves as sales representatives of BRF Global SA, a frozen meat supplier in Brazil. See Amended Compl. at ¶ 5.[1] Relying on representations made by Lopes and Carlos, Plaintiff alleges that it ordered $348,300.00 worth of frozen chicken paws from BRF Global SA. Id. at ¶ 6. Upon placing the order, in October 2022 Plaintiff made an initial 10% payment to a BMO Harris Bank account, followed by three wire transfers to a TD Bank account, settling the rest of the balance.[2] Id. Plaintiff alleges that it made the payments in reliance on shipping documents provided by Lopes, including counterfeit bills of lading and other documents. Id. at ¶ 8. These documents falsely showed that shipments were sent on October 20, 2022 and November 22, 2022, arriving in early December 2022, and a third shipment on November 21, 2022 set to arrive in late December 2022. Id. Plaintiff learned that the documents Lopes provided were false when it failed to receive notifications from the shipping line, and other parties received the subject containers that arrived. Id. at ¶ 9. BRF Global SA allegedly confirmed that Lopes did not represent its company. Id. at ¶ 10.

Lopes allegedly provided Plaintiff with an account number for the wire transfers to be sent in connection with Plaintiff's order, with the following recipient information: BRF Global GMBH LLC, RUA JORGE TZACHEL, 475FAZENDA-ITAJAI-SC ZIP CODE:88.301-600. Id. at ¶ 7. When Plaintiff discovered the fraud in March 2023, five months after it authorized the wire transfers in issue, it contacted the Hong Kong police and its bank, China CITIC Bank International

---

[1] Citations to "Amended Compl." refer to Plaintiff's First Amended Complaint filed August 17, 2023 (ECF No. 8).

[2] In light of the allegation that a 10% down payment was sent to another financial institution, it is not clear whether $348,300.00 was wired to TD Bank in total, or whether it was $313,470.00 (the $348,300.00 order minus 10% deposit sent to BMO Harris).

("China CITIC"). China CITIC contacted TD Bank who allegedly successfully froze the TD Bank account to which Plaintiff wired funds, "with funds held therein." Id. at ¶ 12. On April 28, 2023, Plaintiff's representative, Chris Chan, filed a police report and Plaintiff's attorney contacted TD Bank's fraud unit, requesting "immediate recovery" of the funds it wired to a TD Bank account five months earlier. Id. at ¶¶ 14-15. According to Plaintiff, TD Bank allegedly failed to disclose to Plaintiff details regarding its investigation or the status of the funds Plaintiff wired to a TD Bank account. Id. at ¶ 17.

On June 13, 2023, Plaintiff filed the Complaint in the Superior Court of New Jersey. See Complaint. TD Bank filed a Notice of Removal on July 13, 2023. See Notice of Removal (ECF No. 1). On July 18, 2023, TD Bank filed an Application for Clerk's Order to Extend Time to Respond, which was granted that same day. See Application for Clerk's Extension (ECF No. 5). On August 3, 2023, TD Bank filed a Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 7). In response to TD Bank's August 3, 2023 Motion to Dismiss, Plaintiff filed its First Amended Complaint on August 17, 2023. (ECF No. 8).

TD Bank now moves for an Order dismissing Plaintiff's First Amended Complaint in its entirety with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

## LEGAL ARGUMENT

### A. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6).

To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim that is plausible on its face. Palakovic v. Wetzel, 854 F.3d 209, 219 (3d Cir. 2017) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Sheridan v. NGK Metals Corp., 609 F.3d 239, 263 n.27 (3d

3

Cir. 2010) (quoting Ashcroft, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Although factual allegations should be accepted as true, the court is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." Morrow v. Balaski, 719 F.3d 160, 165 (3d Cir. 2013).

**B.    The UCC Precludes Plaintiff's Common Law Claim.**

Both the New Jersey Supreme Court and the official comments to the UCC establish that "Article 4A comprehensively governs the rights and remedies of parties affected by funds transfers." ADS Assocs. Grp., Inc. v. Oritani Sav. Bank, 219 N.J. 496, 518 (2014). As provided in the UCC comments:

> Funds transfers involve competing interests — those of the banks that provide funds transfer services and the commercial and financial organizations that use the services, as well as the public interest. These competing interests were represented in the drafting process and they were thoroughly considered. The rules that emerged represent a careful and delicate balancing of those interests and are intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of the Article. Consequently, resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in this Article.
>
> [N.J.S.A. 12A:4A-102, cmt.1.]

It is well settled that "the UCC displaces the common-law where reliance on the common law would thwart the purposes of the UCC." Psak, Graziano, Piasecki & Whitelaw v. Fleet Nat. Bank, 390 N.J. Super. 199, 204-05 (App. Div. 2007) ("Necessarily then, the existence of such a comprehensive remedy to address plaintiff's claim of improper payment in this case precludes a common-law negligence claim against either party."); see also First Atlantic Federal Credit Union v. Perez, 391 N.J. Super. 419, 431 (App. Div. 2007) ("Only in very rare circumstances should a

4

court upset the UCC's legislative scheme of loss allocation and permit a common law cause of action."); Yahn & McDonnell, Inc. v. Farmers Bank of State of Del., 708 F.2d 104, 113 (3d Cir. 1983) (noting that "where the [Uniform Commercial Code] provides a comprehensive remedy for parties to a transaction, a common law action is barred."); New Jersey Bank, N.A. v. Bradford Securities Operations, Inc., 690 F.2d 339, 345 (3d Cir. 1982) (holding that a common law tort action is barred where the UCC provides a "comprehensive remedy" and the purpose of the UCC is to "simplify and clarify the law governing commercial transactions, fostering the expansion of commercial practices, and standardizing the laws of various jurisdictions").

Common law claims involving wire transfers are routinely precluded by the UCC. See ADS Assocs. Grp., Inc., 219 N.J. at 519 (barring Plaintiff from maintaining action for common law negligence when "the dispute in this case arises from a setting directly addressed by Article 4A—a bank's acceptance of an order transferring funds from one account held by its customer to another of that customer's accounts."); Harborview Capital Partners, LLC v. Cross River Bank, 600 F. Supp. 3d 485, 496 (D.N.J. 2022) (holding that Plaintiff's common law claims were preempted by UCC Article 4A because they were predicated on "the very subject matter covered by Article 4A"); DeFazio v. Wells Fargo Bank Nat'l Ass'n, No. 20-375, 2020 U.S. Dist. LEXIS 66848, at *10-11 (D.N.J. Apr. 16, 2020) ("[T]his Court concludes that [Plaintiff's] negligence claims against Wells Fargo are likewise barred by Article 4A, insofar as they are predicated on the bank's allegedly improper acceptance of funds transferred to the Account and/or the bank's transfer of funds out of the Account. Matters concerning funds transfers into and out of banking institutions are covered by Article 4A."); Essgeekay Corp. v. TD Bank, N.A., No. 18-3663, 2018 U.S. Dist. LEXIS 214691, at *15-16 (D.N.J. Dec. 19, 2018) ("The scope of Article 4A encompasses the very situation alleged by Plaintiff in which '[a] payment order purporting to be

5

that of Customer is received by Receiving Bank but the order was fraudulently transmitted by a person who had no authority to act for Customer.'").

Here, wire transfers are the crux of Plaintiff's claims against TD Bank. See Amended Compl. at ¶ 23 ("At all material times hereto, the funds Plaintiff wired to the Subject Bank Account were obtained from Plaintiff through fraudulent means."). As exhaustively demonstrated above, UCC Article 4A comprehensively governs the rights and obligations of parties related to funds transfers. Therefore, Plaintiff's common law replevin claim is precluded by the UCC and must be dismissed.

**C.  Plaintiff's Declaratory Relief Count Should be Dismissed as a Matter of Law.**

Plaintiff contends it is entitled to a declaratory judgment and "return of the aforementioned funds" that it wired to a TD Bank account. See Amended Compl. at ¶¶ 22-27. Declaratory relief is a remedy, not a cause of action. Accordingly, Plaintiff's first count for declaratory relief should be dismissed as a matter of law.

"[C]ourts in this circuit routinely dismiss stand-alone counts for declaratory and injunctive relief, since such claims are requests for remedies, and not independent causes of action." ASAH v. N.J. Dep't of Educ., No. 16-3935, 2017 U.S. Dist. LEXIS 101736 at *35 (D.N.J. June 20, 2017); Chruby v. Kowaleski, 534 Fed. Appx. 156, 160 n.2 (3d Cir. 2013); Kabbaj v. Google Inc., 592 Fed. Appx. 74, 75 n.2 (3d Cir. 2015) (affirming dismissal of count for declaratory and injunctive relief, because "declaratory and injunctive relief are remedies rather than causes of action."); see also Neuss v. Rubi Rose, LLC, No. 16-2339, 2017 U.S. Dist. LEXIS 83444 *24 (D.N.J. May 31, 2017) (dismissing separate counts as improper, since "injunctive and declaratory relief are remedies—not independent causes of action."); Cole v. NIBCO, Inc., No. 13-7871, 2015 U.S. Dist. LEXIS 65960 *41 (D.N.J. May 20, 2015) (holding that "declaratory relief and injunctive relief, as

their names imply, are remedies, not causes of action."); Lee Dodge, Inc. v. Kia Motors Am., Inc., No. 10-5939, 2011 U.S. Dist. LEXIS 97828 at *3 n.1 (D.N.J. Aug. 31, 2011) (dismissing counts for declaratory and injunctive relief because they "are not substantive claims but rather requests for remedies").

Plaintiff's first count for declaratory relief is a remedy rather than a substantive cause of action, and therefore should be dismissed as a matter of law.

**D.     Plaintiff's Replevin Claim Should be Dismissed as a Matter of Law.**

Plaintiff alleges it is entitled to replevin because it is the "rightful and equitably (*sic*) owner of the fraudulently-obtained funds held in the Subject Bank Account." See Amended Compl. at ¶ 29. Plaintiff's replevin claim fails as a matter of law because upon a completed transfer of the funds via wire transfer, Plaintiff no longer owned the funds.

Under New Jersey law, "[a] person seeking recovery of goods wrongly held by another may bring an action for replevin . . . . If the person establishes the cause of action, the court shall enter an order granting possession." N.J.S.A. 2B:50-1. To succeed in a replevin action, the burden is on plaintiff to establish "absolute ownership and right to the possession" of the property. Mandelbaum v. Weiss, 11 N.J. Super. 27, 30-31 (App. Div. 1950); see also Hunt v. Chambers, 21 N.J.L. 620, 623 (E. & A. 1845) ("To maintain replevin, the plaintiff must have the right of exclusive possession to the goods in question. He must not only have property absolute or qualified, and the right of possession at the time of the commencement of the action, but he must have the exclusive right of possession.").

As the bank identified in the wire payment order whose customer was to be credited the funds from Plaintiff, TD Bank is the "beneficiary bank." TD Bank's customer, BRF Global SA, is the "beneficiary." See Amended Compl. at ¶¶ 6-7. The UCC defines a "beneficiary bank" as

"the bank identified in a payment order in which an account of the beneficiary is to be credited pursuant to the order or which otherwise is to make payment to the beneficiary if the order does not provide for payment to an account." N.J.S.A. 12A:4A-103(1)(c). A "beneficiary" means "the person to be paid by the beneficiary's bank." N.J.S.A. 12A:4A-103(1)(b).

As alleged in the Complaint, TD Bank, as beneficiary bank, accepted the wire and was thus obligated under the UCC to complete the wire by crediting the beneficiary's account. See N.J.S.A. 12A:4A-404(1) ("[I]f a beneficiary's bank accepts a payment order, the bank is obliged to pay the amount of the order to the beneficiary of the order."). Accepting the allegations of the Amended Complaint as true, the funds that formerly belonged to Plaintiff were credited to the beneficiary's bank account pursuant to Plaintiff's payment order, and are now the property of the beneficiary.[3] For this reason alone, Plaintiff's claim for replevin should be dismissed.

Plaintiff's replevin claim must also be dismissed for the independent reason that Plaintiff has not alleged the elements of a cause of action for replevin. "To succeed on a claim for replevin, Plaintiff must allege the existence of a debt and the existence of a security interest, perfected or unperfected, and a chattel in possession of the debtor." VW Credit, Inc. v. CTE2, LLC, No. 2:19-cv-19523-CCC-ESK, 2019 U.S. Dist. LEXIS 210548, at *2-3 (D.N.J. Dec. 6, 2019) (citing N.J.S.A. 2B:50-1)). "Chattel is '[m]ovable or transferable property,' especially 'a physical object capable of manual delivery.'" Dougherty v. Drew Univ., 534 F. Supp. 3d 363, 380 (D.N.J. 2021) (quoting Black's Law Dictionary (11th ed. 2019)).

Here, Plaintiff merely alleges it is the rightful owner of the funds it, a non-customer of TD Bank, wired to BRG Global SRA, an entity who is not a party to this case, and is entitled to return

---

[3] Plaintiff has not joined the beneficiary, BRF Global SA, as a party to the case. See generally Amended Compl.

8

of those funds.  See Amended Compl. at ¶¶ 6, 29-30.  Plaintiff does not allege the existence of a debt, a security interest, or the existence of a chattel, and therefore, its replevin claim must fail.

## CONCLUSION

For all the foregoing reasons, TD Bank respectfully requests that the Court grant its Motion to Dismiss in its entirety, with prejudice.

**BROWN & CONNERY, LLP**
*Attorneys for Defendant*

*/s/ Jennifer A. Harris*
Jennifer A. Harris

Dated: August 31, 2023